[Cite as *In re C.B.*, 2022-Ohio-1929.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.B.

C.A. No.     30150

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 19 02 0111

DECISION AND JOURNAL ENTRY

Dated: June 8, 2022

CALLAHAN, Judge.

{¶1} Appellant, J.G. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the paternal grandmother ("Grandmother"). This Court affirms.

I.

{¶2} Mother is the biological mother of C.B., born December 23, 2018. The child's father ("Father") did not appeal the trial court's judgment. Mother has other children who are not parties to this appeal.

{¶3} On February 4, 2019, Summit County Children Services Board ("CSB") filed a complaint, alleging that newborn C.B. was a dependent child because of Mother's drug use and inability to meet the child's basic needs. C.B. was adjudicated a dependent child by agreement of the parties.

**{¶4}** Although the trial court allowed C.B. to remain in Mother's legal custody under an order of protective supervision by CSB, it further ordered that the child be placed in the home of Grandmother, and the parents were prohibited from removing him from that home. The case plan required Mother to complete a substance abuse assessment and follow all recommendations; obtain and maintain stable income and housing; and demonstrate that she could meet the physical, emotional, and educational needs of the child. Because Mother failed to comply with the reunification requirements of the case plan, C.B. was later placed in Grandmother's temporary custody under an order of protective supervision.

**{¶5}** On December 13, 2019, CSB moved to place C.B. in the legal custody of Grandmother. Following an evidentiary hearing before a magistrate, C.B. was placed in Grandmother's legal custody under an order of protective supervision. Mother filed objections to the magistrate's decision, asserting that CSB failed to make reasonable reunification efforts and that legal custody to Grandmother was not in the best interest of C.B.

**{¶6}** On July 29, 2020, the trial court overruled Mother's objections and placed C.B. in the legal custody of Grandmother under an order of protective supervision by CSB. Mother appealed from the trial court's 2020 order, but this Court later dismissed the appeal for lack of a final, appealable order. *In re C.B.*, 9th Dist. Summit No. 29820 (Apr. 6, 2021).

**{¶7}** After this Court dismissed the first appeal, CSB moved the trial court to terminate the order of protective supervision. Following the hearing, the magistrate terminated protective supervision and granted Mother parenting time with C.B. Mother filed objections to the magistrate's decision, which were overruled by the trial court. The trial court placed C.B. in the legal custody of Grandmother, terminated protective supervision, and granted Mother parenting time as she and Grandmother agreed. The order further provided that, if the parties could not agree

on a schedule, "then Mother shall have parenting time with the Child, as is set forth in the Standard Visitation Order[.]" Mother appeals and raises four assignments of error. This Court will consolidate and rearrange some of her assigned errors to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED LEGAL CUSTODY TO PATERNAL GRANDMOTHER WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

**{¶8}** Mother's second assignment of error is that the trial court erred in determining that CSB had made reasonable efforts to reunify C.B. with Mother. Mother does not point to any deficiencies in the services CSB provided to her. In fact, the evidence in the record is not disputed that CSB provided Mother with all reunification services required by the case plan, but Mother failed to engage in reunification services until shortly before the legal custody hearing, nearly one year after this case began. By the time of the legal custody hearing, Mother had obtained a mental health and substance abuse assessment but had seen a counselor only one time. Mother also claimed to have secured housing shortly before the hearing, but she had not allowed CSB to come to the home to inspect it.

**{¶9}** By the time of the hearing to terminate protective supervision more than one year later, Mother still was not prepared to provide C.B. with a suitable home. No evidence was offered that Mother had secured stable employment or housing, or that she was otherwise complying with the case plan. Two witnesses testified that Mother had threatened to harm or kill herself on numerous occasions. Mother was also facing a potential sentence of one year of incarceration on charges of menacing and telephone harassment.

{¶10} Mother's reasonable efforts argument in her objection to the legal custody judgment and on appeal is that CSB failed to adequately investigate allegations that Grandmother had a drinking problem and lived with a man who also abused alcohol and had been violent with her. This Court must emphasize that all hearings in this case were held before a magistrate, who issued the relevant decisions or orders that placed or continued C.B. in Grandmother's home. Juv.R. 40(D)(3)(b)(iv) provides, in relevant part, that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."

{¶11} To preserve this issue for appellate review, Mother was required to comply with Juv.R. 40(D). Mother raised an objection, however, only to the magistrate's reasonable efforts finding in its January 2020 legal custody decision. The evidence presented at the legal custody hearing about alcohol use or domestic violence at Grandmother's house involved one incident in Grandmother's home during September 2019. Both the police and CSB investigated the incident and found no reason to remove C.B. from Grandmother's home. Grandmother testified that, since that time, she had not abused alcohol. The caseworker, who had made frequent announced and unannounced visits to Grandmother's home, testified that she believed that Grandmother was no longer consuming alcohol and that there were no further incidents of domestic violence in the home. Mother offered no evidence at the hearing to dispute the testimony of Grandmother or the caseworker. The trial court later overruled Mother's objections on this basis.

{¶12} Throughout her brief, Mother attempts to support her arguments with citations to a July 2020 hearing held before the trial judge about Mother's objections to the magistrate's January 2020 legal custody decision. The purpose of that hearing was to clarify the arguments that Mother was raising through her objections. The trial judge repeatedly stated on the record

that the court was not taking additional evidence at that hearing. Mother's citations to that hearing merely point to arguments that she made at the hearing, not any evidence that was presented to the trial court. At that point, the only evidence before the trial court about problems in Grandmother's home had been presented at the legal custody hearing and involved an isolated incident of alcohol use and domestic violence at Grandmother's home several months earlier.

{¶13} Mother raised no objections to the magistrate's later findings that C.B. was not at risk of exposure to alcohol abuse or domestic violence in Grandmother's home. Nevertheless, this Court will review the record for plain error.

{¶14} While the prior appeal was pending, Mother filed a motion for the emergency removal of C.B. from Grandmother's home, based on her allegations about another incident at Grandmother's home. Following a hearing before a magistrate on October 30, 2020, the magistrate denied Mother's motion to remove C.B.

{¶15} The magistrate's order emphasized that the incident had been investigated by CSB and that the agency found no reason to remove the child from the custody of Grandmother, who had been providing appropriate care for the child for the past 18 months. Mother did not move to set aside the magistrate's order. *See* Juv.R. 40(D)(2)(b). Consequently, this Court cannot review that finding for plain error because the record does not include a transcript of the evidence presented at that hearing.

{¶16} A final hearing was held before the magistrate on April 28, 2021, to determine whether the court should terminate the order of protective supervision. The caseworker testified that C.B. had been living in Grandmother's home for two years and had been doing well there. CSB had no concerns about ongoing alcohol use or domestic violence in Grandmother's home. The caseworker explained that Grandmother had a no contact order against the man who had been

violent with her, and he no longer lived in the home. Throughout the one year of protective supervision after Grandmother had been awarded legal custody, the caseworker had continued to make announced and unannounced visits to Grandmother's home. She had never observed Grandmother under the influence of alcohol, nor had she seen any signs of domestic violence.

{¶17} At the hearing, Mother testified and expressed no concerns about alcohol use or domestic violence in Grandmother's home. In fact, there was no evidence presented at the hearing about any problems in Grandmother's home since the last hearing. Mother had no concerns about Grandmother driving C.B. and had even requested that Grandmother drive C.B. to and from their visits because it was a 45-minute drive each way and Mother had transportation problems.

{¶18} The evidence in the record does not support Mother's argument that CSB failed to adequately investigate Mother's concerns about alcohol use and domestic violence in Grandmother's home. Consequently, Mother has failed to demonstrate that the trial court erred in concluding that CSB had made reasonable efforts to assure that C.B. was safe and secure in Grandmother's home. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILD TO PATERNAL GRANDMOTHER AND DENIED MOTHER'S MOTION FOR A SIX-MONTH EXTENSION AS [CSB] FAILED TO MEET ITS BURDEN OF PROOF AND THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT TERMINATED PROTECTIVE SUPERVISION OF THE MINOR CHILD IN PATERNAL GRANDMOTHER'S LEGAL CUSTODY OVER OBJECTION FROM MOTHER AS IT WAS AGAINST THE MANIFEST [WEIGHT] OF THE EVIDENCE AND NOT IN [THE] MINOR CHILD'S BEST INTEREST.

{¶19} Although Mother separately assigns error to the trial court first placing C.B. in Grandmother's legal custody and later terminating protective supervision, those two orders together comprise the final, appealable legal custody judgment that is before us on appeal. *See In re S.M.*, 9th Dist. Summit No. 29695, 2021-Ohio-50, ¶ 8-10. A final award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶20} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶21} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. Mother argues that she had made progress on the reunification goals of the case plan, but the record demonstrates that, during the two years that this case was pending, Mother made only minimal progress on the case plan. Moreover, this Court has repeatedly held that a parent's case plan compliance may be relevant to the child's best interest, but it is not determinative. *See, e.g.,*

*In re L.P.*, 9th Dist. Summit No. 29963, 2021-Ohio-3183, ¶ 25; *In re S.S.*, 9th Dist. Summit Nos. 29511 and 29514, 2020-Ohio-1354, ¶ 15.

{¶22} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e)[1]; *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶23} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors relevant here are the child's adjustment to the home, and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d) and (f).

{¶24} Mother again argues under these assignments of error that there was ongoing alcohol abuse and domestic violence in Grandmother's home. As explained in this Court's disposition of Mother's second assignment of error, however, Mother primarily relies on arguments she made at the hearing on her objections to the magistrate's legal custody decision,

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant here.

not on any evidence that was presented to the trial court or is in the record on appeal. By the time of the final hearing, on April 28, 2021, C.B. had been in the legal custody of Grandmother under protective supervision by CSB for 15 months. The caseworker and guardian ad litem had been routinely checking in on C.B. at Grandmother's home. Both opined that the child was doing well there, all his needs were being met, and they had no concerns about his care in Grandmother's home. There was no evidence presented at that hearing that there had been any recent problems at Grandmother's home.

{¶25} In fact, CSB presented evidence that C.B. had been living with Grandmother for two years. Given that the child was only 28 months old at the time of the final hearing, he had lived with Grandmother for most of his life. Although Mother had legal custody of C.B. for almost the first year of his life, C.B. lived in Grandmother's home for seven of those months while Mother lived elsewhere and was prohibited by court order from removing the child from Grandmother's home.

{¶26} Mother's only other argument is that she and C.B. love each other and have a family bond that should be preserved. Mother relies primarily on evidence that she is the child's mother and has a fundamental right to raise her child. This Court must emphasize, however, that the trial court's judgment granting legal custody to Grandmother was not akin to a termination of Mother's parental rights. *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 18. The juvenile court's disposition of legal custody "is a less drastic disposition than permanent custody" because Mother retains her "residual parental rights, privileges, and responsibilities." *Id*.; R.C. 2151.011(B)(21). Those rights include, "but [are] not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50).

{¶27} Because Mother has failed to demonstrate that the trial court's decision to place C.B. in the legal custody of Grandmother and terminate protective supervision was against the manifest weight of the evidence, her first and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER THE BEST INTERESTS OF THE CHILD WHILE DETERMINING VISITATION.

{¶28} Mother's final assignment of error is that the trial court abused its discretion in awarding her parenting time with C.B. as follows:

[Mother] shall be permitted to [have] parenting time with the Child as she and [Grandmother] mutually agree, but if they cannot agree, then Mother shall have parenting time with the Child, as is set forth in the Standard Visitation Order[.]

{¶29} Mother asserts that this order is not workable because she and Grandmother are unlikely to agree on a schedule. She asserts that she and Grandmother have a hostile relationship and, there is "no reason to believe that their hostility [will] abate." Mother merely speculates that she and Grandmother might be unable to agree on a parenting time schedule. She points to no evidence in the record that Grandmother has ever impeded her time with C.B. in the past. In fact, Grandmother had been facilitating Mother's parenting time with C.B. and had often arranged the schedule so that Mother and C.B. could also visit with Mother's two other minor children, who live in the custody of other relatives. If Mother and Grandmother cannot agree on a parenting time schedule in the future, the order explicitly provides that Mother will have time as set forth in the standard order.

{¶30} The parenting time ordered in this case complies with the requirements of juvenile court, which express a preference for visitation to be scheduled as agreed by the parties. Loc.R. 17(A) of the Court of Common Pleas of Summit County, Juvenile Division, provides that the

standard order of visitation "can be used by parties to assist in the development of their own visitation schedule. This visitation schedule may also be made an order of the Court when parties are unable to come to an agreed upon visitation order." Because Mother has failed to demonstrate that the trial court erred in its parenting time order, her third assignment of error is overruled.

## III.

**{¶31}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

NEIL P. AGARWAL, Guardian ad Litem.

M. B., Grandmother.

J. B., Father.